

**FILED & ENTERED**

**MAY 26 2017**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY** gonzalez **DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA
# LOS ANGELES DIVISION

| | |
|---|---|
| In re:   Green Jane, Inc.,<br>          Debtor. | Case No.:  2:17-bk-12677-ER<br>Chapter:    11<br><br>**MEMORANDUM OF DECISION (1) CONVERTING CASE TO CHAPTER 7, (2) DENYING MOTION TO DISMISS FOR IMPROPER VENUE OR IN THE ALTERNATIVE TO TRANSFER VENUE, AND (3) DENYING AS MOOT DEBTOR'S APPLICATION TO EMPLOY STILLMAN & ASSOCIATES AS GENERAL BANKRUPTCY COUNSEL**<br><br>Date:       May 16, 2017<br>Time:       11:00 a.m.<br>Location:  Courtroom 1568<br>              Roybal Federal Building<br>              255 East Temple Street<br>              Los Angeles, CA 90012 |

    At the above-captioned date and time, the Court conducted hearings on (1) a motion filed by the United States Trustee (the "UST") seeking dismissal of this case with a 180-day bar against refiling, (2) a motion filed by creditor BevTech, Inc. ("BevTech") seeking to dismiss the case for improper venue or in the alternative seeking to transfer venue to the Bankruptcy Court for the District of Colorado, and (3) a motion filed by the Debtor seeking approval of the employment of Philip Stillman as general bankruptcy counsel.[1] Hatty Yip appeared on behalf of the UST, Philip

---

[1] In connection with these matters, the Court reviewed the following pleadings:
  1) United States Trustee's §1112(b) Motion to Dismiss:

    a) Notice of Motion and Motion Under 11 U.S.C. §1112(b)(1) to Convert, Dismiss or Appoint a Chapter 11 Trustee with an Order Directing Payment of Quarterly Fees and for Judgment Thereon [Doc. No. 20]
    b) Response of Debtor and Debtor in Possession in Opposition to U.S. Trustee's Motion Under 11 U.S.C. §1112(b)(1) to Convert, Dismiss or Appoint a Chapter 11 Trustee with an Order Directing Payment of Quarterly Fees and for Judgment Thereon [Doc. No. 37]
    c) Official Committee of Unsecured Creditors' Response to Motion of the United States Trustee Under 11 U.S.C. §1112(b)(1) to Convert, Dismiss or Appoint a Chapter 11 Trustee with an Order Directing Payment of Quarterly Fees and for Judgment Thereon
        i) Official Committee of Unsecured Creditors' Application to File Late Response to (A) Motion of the United States Trustee Under 11 U.S.C. §1112(b)(1) to Convert, Dismiss or Appoint a Chapter 11 Trustee with an Order Directing Payment of Quarterly Fees and for Judgment Thereon and (B) Motion of BevTech, Inc., dba GreenCo2Systems, to Dismiss Case for Improper Venue or Transfer to Another District [Doc. No. 43]
        ii) Order Granting Application of the Official Committee of Unsecured Creditors to File Late Responses to Motions Set for Hearing on May 16, 2017 [Doc. No. 44]
    d) United States Trustee's Reply to Response of Debtor and Debtor in Possession in Opposition to U.S. Trustee's Motion Under 11 U.S.C. §1112(b)(1) to Convert, Dismiss or Appoint a Chapter 11 Trustee with an Order Directing Payment of Quarterly Fees and for Judgment Thereon [Doc. No. 39]
    e) Official Committee of Unsecured Creditors' Response to Tentative Ruling for May 16 Hearing [Doc. No. 54]
        i) Order Allowing Official Committee of Unsecured Creditors to Supplement its Response to Motion of the United States Trustee Under 11 U.S.C. §1112(b)(1) to Convert, Dismiss or Appoint a Chapter 11 Trustee with an Order Directing Payment of Quarterly Fees and for Judgment Thereon [Doc. No. 50]

2) BevTech's Motion to Dismiss for Improper Venue or in the Alternative to Transfer Venue:
    a) Motion of BevTech, Inc. dba GreenCo2Systems, to Dismiss Case for Improper Venue or Transfer to Another District (the "Venue Transfer Motion") [Doc. No. 24]
        i) Notice of Motion [Doc. No. 25]
    b) Response to Motion of BevTech, Inc. dba GreenCo2Systems, to Dismiss Case for Improper Venue or Transfer to Another District [filed by the Paula Garlinge Trust and Elizabeth Pearce] [Doc. No. 32]
    c) [Debtor's] Opposition to Motion of BevTech, Inc. to Dismiss Case for Improper Venue or Transfer to Another District [Doc. No. 34]
    d) Official Committee of Unsecured Creditors' Opposition to Motion of BevTech, Inc. dba GreenCo2Systems, to Dismiss Case for Improper Venue or Transfer to Another District [Doc. No. 41]
        i) Official Committee of Unsecured Creditors' Application to File Late Response to (A) Motion of the United States Trustee Under 11 U.S.C. §1112(b)(1) to Convert, Dismiss or Appoint a Chapter 11 Trustee with an Order Directing Payment of Quarterly Fees and for Judgment Thereon and (B) Motion of BevTech, Inc., dba GreenCo2Systems, to Dismiss Case for Improper Venue or Transfer to Another District [Doc. No. 43]
        ii) Order Granting Application of the Official Committee of Unsecured Creditors to File Late Responses to Motions Set for Hearing on May 16, 2017 [Doc. No. 44]
    e) [BevTech's] Reply to Official Committee of Unsecured Creditor's Opposition to Motion of BevTech, Inc. dba GreenCo2Systems, to Dismiss Case for Improper Venue or Transfer to Another District [Doc. No. 47]

3) Debtor's Application to Employ Stillman & Associates as General Bankruptcy Counsel:
    a) Application of Debtor and Debtor in Possession to Employ Stillman & Associates as General Bankruptcy Counsel (the "Employment Application") [Doc. No. 17]
        i) Supplemental Declaration of Philip H. Stillman in Support of Notice of Application and Application of Debtor and Debtor in Possession to Employ Stillman & Associates as General Bankruptcy Counsel [Doc. No. 29]
    b) United States Trustee's Objection to Application of Debtor and Debtor in Possession to Employ Stillman & Associates as General Bankruptcy Counsel [Doc. No. 21]

Stillman appeared on behalf of the Debtor, Jason Boyer appeared on behalf of BevTech, Inc., and Thomas Willoughby appeared on behalf of the Official Committee of Unsecured Creditors (the "Committee"). At the conclusion of the hearing, the Court took the three motions under submission. For the reasons set forth below, the case is converted to Chapter 7. In view of the conversion to Chapter 7, the Debtor's application to employ Stillman & Associates as general bankruptcy counsel is denied as moot. BevTech's motion seeking to dismiss the case for improper venue or in the alternative to transfer venue is denied.

## I. Facts and Summary of Pleadings

Green Jane, Inc. (the "Debtor") commenced a voluntary Chapter 11 petition on March 6, 2017. On April 6, 2017, the United States Trustee (the "UST") appointed the Paula Garlinge Trust and Elizabeth Pearce to serve as members of the Committee. On April 19, 2017, the UST appointed three additional creditors to the Committee: Richard L. Costanzo, James P. Fitzgerald, and James Wong. Mr. Costanzo is the chair of the Committee. Costanza Decl. at ¶1[Doc. No. 42]. In 2015, Mr. Costanzo contracted with the Debtor to be employed as president of the Debtor's wholly-owned subsidiary, Green Mountain Assets. *Id.* at ¶3. Mr. Costanzo loaned the Debtor $150,000 and received two promissory notes, both of which are currently in default. *Id.* Four members of the Committee are former executives of either the Debtor or one of its wholly-owned subsidiaries. Mr. Wong was the former president of the Debtor. *Id.* at ¶5. Ms. Pearce was the former chief financial officer of the Debtor. *Id.* Mr. Fitzgerald was a former employee of the Debtor. *Id.*

The Committee believes that Michael Citron, the Debtor's CEO, has misused, hidden, and redirected the Debtor's assets and revenues in furtherance of his personal interests and to the detriment of the Debtor's creditors and shareholders. *Id.* at ¶6. The Committee has no confidence in Mr. Citron's ability to allocate the Debtor's investor proceeds and operating income to satisfy necessary operating overhead, creditor payments, employee payroll obligations, or investor interest payments. *Id.* at ¶7. The Committee believes that Mr. Citron unilaterally terminated key management of the Debtor pre-petition without proper board approval and has consistently neglected or disregarded standard corporate governance protocols. *Id.* at ¶8. On May 5, 2017, the Committee met and voted unanimously to support the appointment of a Chapter 11 Trustee. *Id.* at ¶9.[2]

The Debtor is a Delaware corporation. Citron Decl. at ¶1 [Doc. No. 34]. The Debtor contends that it purchased 80% of BevTech, a Colorado company, in January 2015. *Id.* at ¶4. The Debtor asserts that BevTech's shareholders froze out the Debtor, preventing it from exercising its voting rights. *Id.* BevTech is suing the Debtor and the Debtor's CEO, Mr. Citron, in a state court case in Colorado (the "Colorado Action") (Case No. 2015-cv-31002). BevTech asserts that Mr. Citron breached his fiduciary duties as a member of the Debtor's Board of Directors, and that the Debtor committed fraud in connection with a business contract that unraveled in 2015. Trial

---

      i) Supplemental Declaration of Gary Baddin in Support of United States Trustee's Objection to Application of Debtor and Debtor in Possession to Employ Stillman & Associates as General Bankruptcy Counsel [Doc. No. 30]
      c) Reply of Debtor and Debtor in Possession in Opposition to U.S. Trustee's Objection to Application to Retain Philip Stillman as Counsel for Debtor [Doc. No. 40]

[2] On May 11, 2017, the Court entered an order authorizing the Committee to file late responses to the UST's Motion to Dismiss and BevTech's Motion to Transfer Venue. The Court authorized the late responses given that the Committee had only recently retained counsel.

against the Debtor was set to go forward on March 13, 2017, but was stayed as a result of the filing of the petition. The Colorado state court determined that the automatic stay did not prevent trial going forward on BevTech's claims against Mr. Citron.

The Debtor's only source of revenue are the shareholder distributions it claims it is entitled to receive on account of its asserted 80% ownership interest in BevTech. Citron Decl. at ¶4 [Doc. No. 37]. The Debtor asserts that the Chapter 11 petition will enable it to obtain turnover of its voting rights in BevTech from the shareholders who allegedly froze out the Debtor. According to the Debtor, BevTech has a monthly profit from operations of over $100,000. *Id.* at ¶2. The Debtor maintains that once it regains control of BevTech, the funds from BevTech's operations will be sufficient to fund a plan.

**A. Summary of Pleadings Pertaining to BevTech's Motion to Dismiss for Improper Venue or to Transfer Venue**

BevTech moves to dismiss the case on the grounds that the Central District of California is an improper venue. In the alternative, BevTech argues that the Court should transfer the case to the Bankruptcy Court for the District of Colorado. BevTech makes the following arguments in support of its motion:

1) Debtor's principal place of business is in Colorado, as evidenced by a Statement of Foreign Entity Authority filed with the Colorado Secretary of State on July 30, 2015. The Debtor has not filed a similar document authorizing it to conduct business in California, and has not obtained a state sales tax license or any other business licenses or permits. One of the Debtor's wholly-owned subsidiaries, Growth Innovations, is a Colorado corporation.
2) Debtor filed the petition in bad faith for the sole purpose of delaying trial in the Colorado Action. It appears that the Debtor filed the petition in California because its proposed counsel is licensed to practice law in California but not in Colorado.

The Debtor makes the following arguments in opposition to BevTech's motion:
1) As established by the declaration of Mr. Citron, the Debtor's CEO, the Debtor has been located in Los Angeles, California since June 2016. The Debtor's executives all live in Los Angeles and its business records are located in Los Angeles. Venue is appropriate in the Central District of California because the Debtor has been located in Los Angeles during the 180 days prior to the commencement of the case. The fact that the Debtor filed documents seeking to conduct business in Colorado in July of 2015 is irrelevant, given that the Debtor has more recently relocated its operations to Los Angeles.
2) The fact that one of the Debtor's wholly-owned subsidiaries is a Colorado corporation is irrelevant. The location of a subsidiary corporation is not the basis for establishing venue for the parent corporation.

The Committee opposes transfer of venue, arguing that the case should remain in California because most of the Committee members and the Debtor's management live in California. In reply, BevTech argues that because most of the recoveries in this case will result from litigation, Colorado is the most logical forum given that litigation between the BevTech, the Debtor, and the Debtor's CEO Mr. Citron is already pending in the Colorado state court.

**B. Summary of Pleadings Pertaining to the UST's §1112(b) Motion to Dismiss with a 180-day Bar Against Refiling**

The UST moves to dismiss this case, with a 180-day bar against re-filing, based on the Debtor's failure to comply with various reporting requirements. In opposition, the Debtor argues that (1) it has substantially complied with UST reporting requirements; (2) that the UST failed to notify it before filing the §1112(b) motion; (3) that the deficiencies alleged in the UST's motion were not deficiencies at all since those specific reporting requirements do not apply to the Debtor; and (4) that the Debtor will be able to successfully reorganize by obtaining turnover of its voting rights in BevTech, which will enable the Debtor to begin receiving shareholder distributions on account of its BevTech ownership interest. In reply, the UST asserts that the Debtor remains delinquent in its reporting requirements, having failed to provide the following:
1) A lease for the property where the Debtor conducts its business;
2) Proof of insurance for its $250,000 polarization machine;
3) Proof of opening debtor-in-possession bank accounts;
4) Proof of current business licenses;
5) A statement of major issues and timetable;
6) A statement of projected cash flow; and
7) Tax returns.

The Committee opposes dismissal or conversion. The Committee supports the appointment of a Chapter 11 Trustee, based on the Committee's loss of faith in the Debtor's ability to fulfill its fiduciary duties to creditors. If the Court does not believe that a Chapter 11 Trustee should be appointed, the Committee prefers conversion over dismissal. The Committee opposes dismissal on the grounds that the Debtor's assets will not be fully realized if the case is dismissed. The Committee further argues that if the case remains in bankruptcy, the claims of BevTech can be subordinated to the claims of general unsecured creditors under §510(b), whereas if the case is dismissed, the general unsecured creditors will be junior to BevTech.

**C. Summary of Pleadings Pertaining to the Debtor's Application to Employ Philip Stillman as General Bankruptcy Counsel**

The Debtor seeks to employ Philip Stillman of Stillman & Associates ("Mr. Stillman") as its general bankruptcy counsel (the "Employment Application"). The Employment Application provides for the Debtor to pay Mr. Stillman a $25,000 success fee from the first distributions to the Debtor in the event that the Debtor obtains turnover of its claimed 80% interest in BevTech. According to the Debtor, this arrangement is necessary because the Debtor lacks any cash flow. The Employment Application further provides that the Debtor has agreed to the withdrawal of Mr. Stillman if the Debtor is unable to obtain turnover of its BevTech interest.

The UST objects to Mr. Stillman's employment. The UST makes the following arguments in support of its objection:
1) The Debtor has failed to comply with applicable reporting requirements, and the Debtor's proposed counsel did not attend the initial debtor interview or the initial meeting of creditors.
2) The Employment Application failed to accurately disclose the source of Mr. Stillman's $6,750 retainer. The Employment Application states that the retainer came from "free and clear funds of the Debtor." However, at the initial debtor interview, the Debtor's principal

stated that the retainer was a loan from an insider and minority shareholder who is also state court counsel for the Debtor.
3) The Employment Application fails to specifically describe the details of counsel's relevant bankruptcy experience. It does not state the number of cases in which Mr. Stillman has served as counsel for debtors-in-possession and does not state how many Chapter 11 plans that Mr. Stillman has confirmed.
4) The Employment Application fails to provide proper justification for the $25,000 success fee.

In reply to the UST's objection, Mr. Stillman argues that his employment should be approved because (1) he has met Bankruptcy Rule 2014's requirement of disinterestedness; (2) he believed the $6,750 retainer came from the Debtor because the funds were wired to him from the Debtor's law firm; (3) the $25,000 success fee is reasonable and necessary given the Debtor's lack of income, and such an alternative payment arrangement is permissible under §328; and (4) it was not Mr. Stillman's fault that the Debtor submitted its seven-day package late.

## II. Findings and Conclusions
### A. The Case is Converted to Chapter 7

Section 1112(b) provides that the Court, upon request of a party in interest, "shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate." Section 1112(b)(4) contains a nonexclusive list of factors that constitute cause for dismissal or conversion. "[F]ailure timely to provide information or attend meetings reasonably requested by the United States trustee" constitutes cause for dismissal or conversion. §1112(b)(4)(H). The factors set forth in §1112(b)(4) "are not exhaustive, and 'the court will be able to consider other factors as they arise, and to use its equitable powers to reach an appropriate result in individual cases.'" *Pioneer Liquidating Corp. v. United States Trustee (In re Consol. Pioneer Mortg. Entities)*, 248 B.R. 368, 375 (B.A.P. 9th Cir. 2000), *aff'd,* 264 F.3d 803 (9th Cir. 2001).

Local Bankruptcy Rule ("LBR") 2015-2(a)(1) provides: "The … debtor in possession … must timely provide the United States Trustee with financial, management and operational reports, and such other information requested by the United States Trustee pursuant to the *Guidelines and Requirements for Chapter 11 Debtors in Possession* as necessary to properly supervise the administration of a Chapter 11 case." Debtors are under a continuing obligation to comply with all requirements imposed by the UST. Failure to timely comply is grounds for dismissal. If Debtors do not timely submit the required information, the UST cannot effectively carry out its oversight responsibilities under 28 U.S.C. §586. There is nothing in the statute that says that Debtors may ignore their compliance obligations until receiving a warning from the UST. The UST's office does not have the resources to babysit every single Chapter 11 Debtor with respect to its reporting and compliance obligations. By commencing a Chapter 11 petition, the Debtor voluntarily accepted the responsibility of complying with all applicable laws and regulations, including reporting obligations imposed by the UST's office.

Here, the Debtor's compliance has been woefully deficient, as detailed below. Further, the Debtor has displayed a cavalier attitude towards its compliance obligations, even going so far as to blame the UST for filing its motion to dismiss under §1112(b) without first warning the

Debtor.[3] The Debtor's numerous failings to fulfill its obligations as a debtor-in-possession include the following:

1) The Debtor's proposed bankruptcy counsel failed to attend the initial meeting of creditors. The fact that Mr. Stillman's employment as the Debtor's general bankruptcy counsel had not yet been approved is not an excuse. As a result of counsel's failure to attend, the meeting of creditors had to be postponed. It was not enough for the Debtor to send Mr. Morris, the attorney responsible for litigating the Colorado Action, to the meeting of creditors. Regardless of how familiar Mr. Morris is with the Debtor, it was never contemplated that he would be responsible for advising the Debtor during the bankruptcy case. The Debtor should have sent Mr. Stillman to the meeting of creditors. This is particularly important given that a corporation cannot appear except through counsel. *See* Local Bankruptcy Rule ("LBR") 9011-2(a).

2) The Debtor did not submit the seven-day package to the UST until April 18. The seven day package was due on March 13, so the Debtor's submission was more than one month late. The seven-day package is crucial to allow the UST to perform its statutory duties to ensure that debtors-in-possession are acting as fiduciaries for creditors. The documents in the seven-day package are time-sensitive, and it is critical that the UST receive those documents timely so that the UST may fulfill its statutory obligations. Debtors have no incentive to timely submit the seven day package if they do not face real consequences for failing to do so. Mr. Stillman's attempt to blame the late submission on his client, the Debtor, is not well taken.[4] In the Court's view, it is the responsibility of an attorney seeking to be employed as the Debtor's general bankruptcy counsel to exert whatever pressure on the Debtor's principals as is necessary to ensure that the Debtor remains in timely compliance with UST reporting requirements.

3) The Debtor failed to timely submit the March 2017 monthly operating report ("MOR"). The March MOR was due on April 15, 2017. *See* Guidelines and Requirements for Chapter 11 Debtors in Possession ("UST Requirements") at §IV.C.2. It was not submitted until May 8, 2017. The April 2017 MOR, which was due on May 15, 2017, was not submitted until May 23, 2017. Again, timely submission of the MORs is essential so that the UST and parties in interest can ensure that the Debtor is acting as a fiduciary for creditors.

4) The March MOR was not properly signed by Mr. Citron, the Debtor's principal. MORs must either (1) contain an original signature or (2) be accompanied by an Electronic Filing Declaration. *See* Local Bankruptcy Rule ("LBR") 1002-1(f). Here, there was an "/s/" but no original signature or accompanying electronic filing declaration. The requirement of an original signature is not a meaningless procedural formality. Rather, it is intended to ensure that officials in control of the Debtor's operations have actually reviewed the MOR and that the contents in the MOR accurately reflect the Debtor's operations.

---

[3] *See* Response of Debtor and Debtor in Possession in Opposition to U.S. Trustee's Motion [Doc. No. 37] at 2 (stating that "the U.S. Trustee failed to even give counsel for Green Jane any pre-filing notice of the Motion and conducted no pre-filing conference with counsel").

[4] *See* Reply of Debtor and Debtor in Possession in Opposition to U.S. Trustee's Objection to Application to Retain Philip Stillman as Counsel for the Debtor [Doc. No. 40] at 7 ("Mr. Stillman is not the guarantor of [Debtor] Green Jane's compliance with all aspects of the requirements of the U.S. Trustee …").

5) The Debtor has failed to provide a statement of major issues and a timetable with respect to its contemplated reorganization. The Debtor's contention that a statement of major issues and a timetable is premature is completely without merit.[5]

As a result of the Debtor's non-compliance with UST reporting requirements, cause exists for conversion, dismissal, or appointment of a Chapter 11 Trustee. The Court's task is therefore to determine which of these alternatives is in the best interests of creditors.

Dismissal at this juncture would not be in the interests of creditors, because the distinct possibility exists that, if the Debtor remains in bankruptcy, the claims asserted against the Debtor by BevTech in the Colorado Action could be subordinated to the claims of the general unsecured creditors, pursuant to §510(b). The Committee has not yet been able to obtain the record in the Colorado Action, which is not available electronically. However, the characterization of the Colorado Action offered by Mr. Stillman and Mr. Boyer at the May 16, 2017 hearing suggests it is possible that BevTech's substantial claims against the Debtor may be subject to subordination. If BevTech's claims can be subordinated, the interests of the general unsecured creditors are best served by the case remaining in bankruptcy.

The Court finds that conversion to Chapter 7 is preferable to the appointment of a Chapter 11 Trustee. The Debtor's March 2017 MOR and the declarations of its CEO and proposed counsel show that the Debtor has no operating business. The Debtor's CEO, Mr. Citron, states that the Debtor's asserted 80% interest in BevTech is its "only source of revenue." Citron Decl. at ¶4 [Doc. No. 37]. Mr. Stillman, the Debtor's proposed general bankruptcy counsel, states that the Debtor "lacks any cash flow." Stillman Decl. at ¶9 [Doc. No. 17]. The Debtor's March 2017 MOR states that no revenue was generated and that no employees were paid, and projects that no income will be earned the subsequent month. In the absence of an operating business to reorganize, it makes more sense for the case to proceed under Chapter 7 than under Chapter 11.

## B. BevTech's Motion to Dismiss for Improper Venue or in the Alternative to Transfer Venue is Denied

Bankruptcy Rule 1014 provides:

> If a petition is filed in the proper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may transfer the case to any other district if the court determines that the transfer is in the interest of justice or for the convenience of the parties.
>
> If a petition is filed in an improper district, the court, on the timely motion of a party in interest or on its own motion, and after hearing on notice to the petitioners, the United States trustee, and other entities as directed by the court, may dismiss the case or transfer

---

[5] The Court's finding that the UST has established cause for conversion or dismissal is not based upon the Debtor's failures (1) to submit proof of insurance coverage for its ice polarization motion, (2) to provide the UST a lease for its office space in Marina del Rey, or (3) to provide proof that it has opened debtor-in-possession bank accounts. Given the substantial outstanding non-compliance aside from these three specific items, it is unnecessary for the Court to determine whether these three issues would, standing alone, constitute cause for conversion or dismissal. However, based on the record before it, the Court notes that the ice polarization machine appears to have no insurable value, and that the Debtor appears to have made a bona fide effort to obtain a copy of the lease for its office space and to open debtor-in-possession bank accounts. The Debtor has had particular difficulty opening debtor-in-possession bank accounts because its connections to the marijuana industry make insured depository institutions reluctant to conduct business with the Debtor.

> it to any other district if the court determines that transfer is in the interest of justice or for the convenience of the parties.

Title 28 U.S.C. §1408 sets forth the standards for determining the proper district for filing a petition:

> Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district—
> > (1) in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or
> > (2) in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

The Ninth Circuit Bankruptcy Appellate Panel has interpreted 28 U.S.C. § 1408 as follows:

> [V]enue for a bankruptcy case may be based upon any of four alternatives: the debtor's (1) domicile, (2) residence, (3) principal place of business in the United States, or (4) principal place of assets in the United States. Proper venue is determined by reference to the facts existing within the 180–day period prior to the filing of the bankruptcy petition. 28 U.S.C. § 1408(1). Any one of the four bases is sufficient to support proper venue…. The purpose of statutory venue requirements is to ensure that a case is filed in a forum that is convenient for the parties in interest.

*Montana v. Blixseth (In re Blixseth)*, 484 B.R. 360, 365 (B.A.P. 9th Cir. 2012) (internal citations omitted).

1. The Central District of California is the Proper Venue

The Court finds that the Central District of California is the proper venue for this case. Although there is no operating business to reorganize, to the limited extent that the Debtor conducts business, it does so within California. The Supreme Court has explained that "'principal place of business" is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). The Debtor conducts meetings with shareholders, business prospects, and potential investors from leased office space located in Marina del Rey, and the Debtor's management lives in Los Angeles. Citron Decl. at ¶¶2–3 [Doc. No. 34]. Thus, California is the Debtor's principal place of business.

The other three bases for venue—domicile, residence, and the principal place of assets—do not support venue in the Central District of California, but this is immaterial as venue may be predicated upon any one of the four alternatives. The Debtor's domicile is Delaware, the state in which it is incorporated. *See In re B.L. of Miami, Inc.*, 294 B.R. 325, 328 (Bankr. D. Nev. 2003). The Debtor's residence is also its state of incorporation. *See Rosenfeld v. S.F.C. Corp.*, 702 F.2d 282, 283 (1st Cir. 1983). The Debtor's principal asset—its asserted interest in BevTech—is intangible. For venue purposes, determining the location of an intangible asset requires a "context-specific analysis" that must take account of the "functional concerns of the administration of the bankruptcy estate." *Blixseth*, 484 B.R. at 367. Based on the pre-petition

litigation in Colorado between the Debtor and BevTech, the Court finds that the Debtor's claimed membership interest in BevTech is located in Colorado for venue purposes.

As venue in the Central District of California is proper, BevTech's motion to dismiss the case for improper venue is denied.

2. The Court Declines to Transfer Venue to the District of Colorado

Even if a case is filed in the proper district, the Court may transfer venue "if the court determines that the transfer is in the interest of justice or for the convenience of the parties." Bankruptcy Rule 1014. "The party that seeks to transfer venue bears the burden of showing by a preponderance of the evidence that transfer would be appropriate." *TIG Ins. Co. v. Smolker*, 264 B.R. 661, 668 (Bankr. C.D. Cal. 2001).

To determine whether a transfer is in the "interest of justice," courts consider the following factors:
1) The location of the pending bankruptcy;
2) Whether the transfer would promote the economic and efficient administration of the bankruptcy estate;
3) Whether the interests of judicial economy would be served by the transfer;
4) Whether the parties would be able to receive a fair trial in each of the possible venues;
5) Whether either forum has an interest in having the controversy decided within its borders;
6) Whether the enforceability of any judgment obtained would be affected by the transfer;
7) Whether the plaintiff's original choice of forum should be disturbed.

*Maya, LLC v. Cytodyn of New Mexico, Inc. (In re Cytodyn of New Mexico, Inc.)*, 374 B.R. 733, 742 (Bankr. C.D. Cal. 2007).

To determine whether the convenience of the parties justifies a transfer, courts consider the following factors:
1) Ease of access to the necessary proof;
2) The convenience of the witnesses and the parties and their relative physical and financial condition;
3) The availability of the subpoena power for unwilling witnesses;
4) The expense related to obtaining witnesses.

*Id.* at 742.

Upon consideration of the relevant factors, the Court finds that neither the interest or justice nor the convenience of the parties supports transfer to the District of Colorado. With respect to the convenience of the parties, the Court places particular weight upon the preference of the largest general unsecured creditors for the case to remain in California. Also significant is that four out of the five Committee members live in California, and the Debtor's CEO and other key personnel live in Los Angeles. The only fact that weighs in favor of transferring venue to Colorado is the Debtor's litigation with BevTech. However, the existence of pre-petition litigation in another forum is not sufficient reason to transfer venue, especially where a transfer would greatly inconvenience the parties.

With respect to the interest of justice, the factors are either neutral or weigh in the Debtor's favor. Transfer would not support the economic administration of the estate, given that key creditors and the Debtor's principals are located in California (factor two). Notwithstanding the

pre-petition BevTech litigation, Colorado has no compelling interest in having the bankruptcy litigated within its borders (factor five). Factor six (the enforceability of any judgment) does not apply, and factor four (the ability to receive a fair trial) is neutral.

In sum, BevTech has failed to meet the "heavy burden of proof" necessary to support transfer. *In re Acor*, 510 B.R. 588, 593 (Bankr. W.D. Tenn. 2014).

### III. Conclusion

Based upon the foregoing, the case is converted to Chapter 7, the motion to dismiss for improper venue or in the alternative to transfer venue is denied, and the Debtor's application to employ Stillman & Associates as general bankruptcy counsel is denied as moot in view of the conversion of the case to Chapter 7. The Court will enter orders consistent with this Memorandum of Decision.

###

Date: May 26, 2017

Ernest M. Robles
United States Bankruptcy Judge